## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

RONNELL D. McKINNEY,

      Petitioner,

v.                             Case No.  5:18-cv-60-MCR-MJF

MARK S. INCH,[1]

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Ronnell McKinney has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") filed an answer, providing relevant portions of the state court record. (Doc. 13). McKinney replied. (Doc. 14). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter and that McKinney is not entitled to habeas relief.[2]

---

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d).

[2] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background Facts and Procedural History[3]

McKinney and Latasha Black had been dating for almost one year when, in December 2006, they broke up and Black kicked McKinney out of her home. Black rejected McKinney's attempts to reconcile, but the two continued to see each other almost daily. McKinney believed Black was cheating on him, and told her so in a text message on December 16, 2006. He warned her that if he confirmed his suspicion, he would be upset.

McKinney knew that Black's former boyfriend, Michael Watts, might be coming to visit Black around Christmas. Watts lived in Atlanta, Georgia, and had been a father figure to Black's oldest daughter since her birth. Black expected Watts to arrive on Christmas Day, but when he did not, Black allowed McKinney to spend Christmas day and night at her apartment with her and her two daughters.

The next morning, on December 26, 2006, Black went to work. Mid-morning, she got word that Watts was at the bus station, so she picked him up and took him back to her apartment. McKinney called Black several times that afternoon and evening, but Black ignored his calls. Black, Watts, and Black's daughters went to

---

[3] The facts are drawn from the evidence presented at McKinney's trial and are viewed in the light most favorable to the State. (Doc. 13, Attachs. 1-2, Exs. D-E (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

bed around 2:30 a.m. Shortly thereafter, McKinney started knocking on Black's bedroom window and front door, calling her name, telling her to open the door, and repeating, "I'm outside, I know you're in there." This continued for approximately thirty minutes. Black did not want a confrontation between Watts and McKinney, so she called the police for assistance. When the police arrived, they could not find McKinney. In an effort to avoid a confrontation, Black, her two daughters, and Watts drove to her mother's home (Eleanor Myers) with a police escort. By now, it was between 4:00 and 5:00 a.m. on December 27, 2006.

Black, her daughters, and Watts spent December 27, 2006, at Myers's home. That evening, Black, her stepfather, and Watts were on Myers's front porch smoking cigarettes and drinking. Black thought she heard something move in the bushes but assumed it was a cat. Black and her stepfather went inside the house, leaving Watts on the porch.

Watts, now alone, heard rustling in the leaves and walked to the side of the house to investigate. Watts came face to face with McKinney who was dressed in black and holding a revolver. Watts could see McKinney's face, because it was lit by a light on the side of a neighbor's house. McKinney opened fire on Watts, and continued shooting as he walked toward Watts. Watts ran for the house and, just as he reached the front door, was shot in the abdomen by McKinney. Watts was able

to get inside the house, where Myers called 911. Emergency medical personnel attended to Watts while the police spoke to Myers. Myers identified McKinney as a possible suspect. The police obtained a photograph of McKinney, placed it in a photo spread with five other photographs, and showed the photo spread to Watts at the hospital. Watts identified McKinney as the man who shot him. Police obtained a warrant for McKinney's arrest, but they did not locate and arrest McKinney until approximately one year later. At trial, Watts identified McKinney as the man who shot him.

In Bay County Circuit Court Case No. 2006-CF-4377, McKinney was charged with Attempted Felony Murder (Count I), Aggravated Stalking (Count II), Carrying a Concealed Firearm During Commission of a Felony (Count III), Possession of a Firearm by a Convicted Felon (Count IV), and Aggravated Battery with a Deadly Weapon Causing Great Bodily Harm (Count V). (Doc. 13, Attach. 1, Ex. A at 20-21).[4] Shortly before trial, the State amended the information to charge

---

[4] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer. (Doc. 13). The citation refers to the electronic attachment number followed by the lettered exhibit. If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the document.

only Aggravated Battery with a Firearm Causing Great Bodily Harm. (Doc. 13, Attach. 1, Ex. A at 79, 81).

McKinney was tried by a jury and found guilty as charged. (Attach. 1, Ex. A at 93-94 (verdict); Attach. 2, Ex. E at 236-37 (trial transcript)). The jury made special findings that McKinney actually possessed a firearm; that he discharged the firearm; and that as a result of the discharge, great bodily harm was inflicted on Watts. (*Id*.). The trial court adjudicated McKinney guilty and sentenced him to life imprisonment with a 25-year mandatory minimum term of imprisonment. (Attach. 1, Ex. A at 99-103) (judgment); Attach. 1, Ex. C at 187-200 (sentencing transcript)). On August 20, 2009, the Florida First District Court of Appeal ("First DCA"), affirmed *per curiam* and without written opinion. *McKinney v. State*, 14 So. 3d 1008 (Fla. 1st DCA 2009) (Table) (copy at Attach. 2, Ex. I).

On November 8, 2009, McKinney filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). (Attach. 3, Ex. J at 124-30). The motion resulted in McKinney being re-sentenced as a habitual felony offender to 30 years of imprisonment with a 10-year mandatory minimum term of imprisonment. (Attach. 3, Ex. J at 186-90) (amended judgment)). McKinney appealed. (Attach. 4, Ex. R). While McKinney's appeal was pending, he filed a counseled motion to correct illegal sentence. (Attach. 3, Ex. O at 237-40). The state

circuit court denied relief on that motion. (Attach. 3, Ex. O at 241-68). On February 9, 2011, the First DCA affirmed the trial court's ruling and McKinney's new sentence, *per curiam* without written opinion. *McKinney v. State*, 54 So. 3d 494 (Fla. 1st DCA 2011) (Table) (copy at Attach. 4, Ex. T).

On March 7, 2011, McKinney filed a *pro se* petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel. (Attach. 4, Ex. U). The First DCA denied the petition on the merits on April 27, 2011. *McKinney v. State*, 65 So. 3d 13 (Fla. 1st DCA 2011) (copy at Attach. 4, Ex. V). McKinney's motion for rehearing was denied on May 9, 2011. (Attach. 4, Ex. X).

On September 8, 2011, McKinney filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising six claims. (Attach. 5, Ex. Z at 247-83). By order entered April 18, 2012, the state circuit court set an evidentiary hearing to resolve three claims and appointed counsel to represent McKinney at the hearing. (Attach. 5, Ex. Z at 307, 322). The evidentiary hearing was held on April 26 and 29, 2013. (Attach. 7, Ex. EE (transcript of April 26, 2013, hearing); Attachs. 7-8, Ex. FF (transcript of April 29, 2013, hearing)). On October 29, 2013, the circuit court entered a nonfinal order denying relief on Grounds 2-6, but elected to hold a supplemental evidentiary hearing on Ground 1. (Attachs. 5-6, Ex. AA at 411-576 - Ex. BB at 577-87). The court conducted the supplemental

evidentiary hearing on January 8, 2014. (Attach. 6, Ex. CC at 603-70 (transcript)).
On February 10, 2014, the circuit court entered an order denying relief on Ground
1. (Attach. 6, Ex. BB at 594-97). The First DCA affirmed the denial of
postconviction relief, *per curiam* without written opinion. *McKinney v. State*, 163
So. 3d 1185 (Fla. 1st DCA 2015) (Table) (copy at Attach. 8, Ex. II). The mandate
issued April 22, 2015. (Attach. 8, Ex. II).

On April 20, 2015, McKinney filed another *pro se* Rule 3.850 motion.
(Attach. 11, Ex. MM at 602-10). The state circuit court set an evidentiary hearing
and appointed counsel to represent McKinney at the hearing. (Attach. 11, Ex. MM
at 613-14, 704). The evidentiary hearing was conducted on February 26, 2016.
(Attach. 12, Ex. OO (transcript)). On June 3, 2016, the circuit court denied relief.
(Attach. 12, Ex. NN at 724-76 (order)). The First DCA affirmed *per curiam* without
written opinion. *McKinney v. State*, 239 So. 3d 1 (Fla. 1st DCA 2017) (Table) (copy
at Attach. 12, Ex. SS). The mandate issued February 9, 2018. (Attach. 12, Ex. SS).

McKinney filed his federal habeas petition on March 2, 2018, raising two
claims of ineffective assistance of trial counsel. (Doc. 1). The State asserts that
McKinney is not entitled to relief because he fails to meet § 2254(d)'s demanding
standard. (Doc. 13).

## II.   Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or

---

[5] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.   Discussion

**Ground One**      **"Trial Counsel was ineffective for failure to timely: demand speedy trial, file notice of expiration, and move for discharge. This error was in violation of**

Page 11 of 33

**Petitioner's constitutional rights to due process of law under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution as well as his Sixth Amendment right to speedy trial and constitutionally effective counsel." (Doc. 1 at 10).**

McKinney claims that he was denied his right to effective assistance of counsel when trial counsel, Laura McCarthy, failed to timely file a notice of expiration of speedy trial time under Florida Rule of Criminal Procedure 3.191. (Doc. 1 at 10-18). McKinney claims that counsel's error prejudiced him because had counsel timely filed the notice, he likely would have been discharged from the crime because "the State was experiencing severe difficulties securing the victim, Michael Watts, for trial." (*Id*. at 10).

Florida Rule 3.191 provides that a person charged with a felony must be brought to trial within 175 days of being taken into custody. Fla. R. Crim. P. 3.191(a). This rule "is not self-executing and requires a defendant to take affirmative action to avail him-or-herself of the remedies afforded under the rule based on the State's failure to comply with the time limitations." *State v. Nelson*, 26 So. 3d 570, 574 (Fla. 2010). After the 175-day speedy trial period expires, a defendant may file a "Notice of Expiration of Speedy Trial Time," which triggers a 10-day "recapture period." Fla. R. Crim. P. 3.191(p)(2); *Nelson*, 26 So. 3d at 574. Within five days of filing the notice, the court must hold a hearing to determine whether any exceptions

exist that would prevent a speedy trial. Fla. R. Crim. P. 3.191(p)(3); *Nelson*, 26 So. 3d at 574. If no exception exists, the trial court must order that the defendant be brought to trial within the 10-day recapture period. Fla. R. Crim. P. 3.191(p)(3); *Nelson*, 26 So. 3d at 575. If the State fails to bring the defendant to trial within this period, through no fault of the defendant, he is "forever discharged from the crime." *Nelson*, 26 So. 3d at 575 (citing Fla. R. Crim. P. 3.191(p)(3)).

### A.    Exhaustion

The parties agree that McKinney presented this claim to the state courts as Ground One of his Rule 3.850 motion; that the state circuit court denied the claim on the merits in a reasoned order after an evidentiary hearing; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 18; Doc. 13 at 15). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

**B.** **Clearly Established Federal Law**

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that

presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question

is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### C.    Section 2254 Review of State Court's Decision

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018). This court, therefore, must presume that the First DCA rejected McKinney's claim for the reasons provided by the state circuit court.

The state circuit court rejected McKinney's claim for these reasons:

> The Defendant, in ground one of his Motion, asserts that his trial counsel was ineffective under *Strickland v. Washington*, 104 S. Ct. 2052 (1984) for failure to file a notice of expiration of speedy trial in a timely manner under the circumstances of the instant case. For support, he alleges that he informed his trial counsel, Laura McCarthy, that he did not wish to waive his right to a speedy trial and that the 175 day time limit for a speedy trial had expired on July 23, 2008. According to the Defendant, McCarthy then informed the Court on July 29, 2008 that the speedy trial deadline had already expired and that she would be filing a notice of expiration of speedy trial before the close of court that day. The Defendant states that the Court set August 12,

2008 as the date to address the notice of expiration of speedy trial.

However, according to the Defendant, McCarthy failed to file the notice of expiration of speedy trial until August 4, 2008. The Defendant asserts that McCarthy knew or should have known that the Court was required to hold a hearing on the notice of expiration of speedy trial within five days, *see* Rule 3.191(p)(3), and therefore should have objected to the Court setting the hearing for August 12, 2008. The Defendant also alleges that at the August 12, 2008 hearing, the Court did not address the notice of expiration of speedy trial.

The Defendant argues that McCarthy should have filed the notice of expiration of speedy trial on July 29, 2008, and that the Court should have conducted a hearing on the notice no later than August 4, 2008, a Monday. *See* Rule 3.191(p)(3). He points out that if the notice [had] been filed on July 29, 2008 and the hearing had been conducted by August 4, 2008, then his trial would have had to [take] place no later than August 14, 2008 due to the 10 day recapture period. *See* Rule 3.191(p)(3). However, since his trial did not actually take [sic] commence until August 19, 2008, he claims that under the instant circumstances, he was prejudiced as a result. For support, he alleges that the victim, Michael Watts, was the only witness who could identify him as the shooter, and that Watts was allegedly "uncooperative and unavailable to testify" against him at trial prior to August 14, 2008. Thus, the Defendant urges that without Watts's testimony, he would have been entitled to a speedy trial discharge because the State would not have been able to bring the Defendant to trial with Watt's testimony within the 10 day recapture period.

To warrant an evidentiary hearing under Rule 3.850, a defendant must allege facts sufficient to establish a prima facia case under the two-prong test set forth in *Strickland v. Washington*, 104 S. Ct. 2052 (1984). First, the defendant must identify particular acts or omissions by counsel that are outside

the broad range of reasonable assistance under prevailing professional standards. *Id*. at 2066. Second, the defendant must also demonstrate prejudice, a reasonable probability that, but for trial counsel's error, the result in the case would have been different. *Id*. at 2068. A reasonable probability is one sufficient to undermine confidence in the outcome of the case. *Id*. The defendant has the burden to prove a claim of ineffective assistance of counsel at an evidentiary hearing on a Rule 3.850 motion. *Pennington v. State*, 34 So. 3d 151, 154 (Fla. 1st DCA 2010). However, once the defendant presents evidence to support the claim, the burden shifts to the State to present contradictory evidence. *Id*. at 154-55. Rule 3.850(d) provides, "If an evidentiary hearing is required, the court shall . . . determine the issues, and make findings of fact and conclusions of law with respect thereto."

At the evidentiary hearing, the Defendant's testimony was essentially consistent with the allegations in ground one of his Motion. He testified that trial counsel McCarthy did not file the notice of expiration of speedy trial on July 29, 2008, and that Watts would not have been available to testify during the speedy trial recapture period as computed from that date. He believed that Watts would not have been available to testify within the speedy trial recapture period in light of what he characterized as the State's own admission in having problems getting the witnesses together to testify in court. He claimed that he heard the prosecutor at trial, Timothy Register, complain on numerous occasions about having difficulties getting the witnesses to testify, up to the day of trial.

Register then testified. Register stated that Watts was the only witness who was able to identify the Defendant as the shooter. Another witness, Latasha Black, was not able to make a similar identification, but testified with regard to the surrounding circumstances of the instant offense. Register acknowledged that without [the] August 4, 2008 filing of the notice of expiration of speedy trial, the trial would not have taken place on August 19,

2008. However, Register indicated that if even [sic] the notice of expiration of speedy trial had been filed on July 29, 2008, he still would have been able to go to trial with Watts's testimony within the recapture period as computed from that date. Specifically, Register testified that once he received the notice, the first thing he did was contact Watts, since Watts was the only witness who could identify the Defendant as the shooter. According to Register, Watts would have been able to testify as early as August 8, 2008. Register unequivocally testified that Watts was cooperative at all relevant times. In fact, even though Watts was in Georgia at the time, it was not necessary to issue a subpoena to secure his testimony. Register did, however, acknowledge that he experienced considerable difficulties in securing Latasha Black's testimony at trial. Black was also in Georgia, and Register testified that it was ultimately necessary to resort to the formal process of serving her with a subpoena there.

The Court finds that at the evidentiary hearing, the Defendant presented sufficient testimony to support his claim, and thereby shift the burden of proof to the State to present contradictory evidence. *Pennington*, 34 So. 3d at 154-55. However, the Court also finds that the State amply rebutted the Defendant's evidence. The Defendant in his testimony testified to hearing Register's general complaints about difficulties he was experiencing in getting the witnesses to testify, and appears to base his belief that Watts would not have been available to testify at trial before August 14, 2008 on those general complaints. In contrast, Register's testimony concerning the availability of the witnesses was more detailed and more credible as he was in direct contact with Watts at the time. As indicated, Register made it clear that he had difficulties only with securing Black's testimony. However, as for Watts, Register made it clear that Watts was cooperative at all relevant times, and, specifically, would have been able to testify as early as August 8, 2008. Accordingly, the Court affords Register's testimony greater weight and makes the factual finding that Watts would have been

available to testify at the Defendant's trial as early as August 8, 2008.

Because the Court finds that Watts would have been available to testify at trial as early as August 8, 2008, the Court concludes that the Defendant's claim in ground one must fail. As indicated, the Defendant in ground one argues that his trial counsel was ineffective for failure to file the notice of expiration of speedy trial until August 4, 2008 under Rule 3.191(p)(3). However, since Watts would have been available to testify as soon as August 8, 2008, or well before August 14, 2008, the Court rules that there is no possible prejudice to the Defendant under the second prong of *Strickland*, regardless of whether trial counsel's performance might have been deficient under the first prong of *Strickland*. In other words, under the second prong, since Watts would have been available to testify as soon as August 8, 2008, there is no reasonable probability that the outcome of the Defendant's trial would have been different if trial counsel had filed the notice of expiration of speedy trial on July 29, 2008 rather than August 4, 2008. Because the Defendant fails to establish the requisite prejudice under the second prong of *Strickland*, the Court need not decide whether trial counsel's performance might have been deficient under the first prong. *See Strickland*, 104 S. Ct. at 2069 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). *See also Waterhouse v. State*, 792 So. 2d 1176, 1182 (Fla. 2001) (when the defendant fails to establish either *Strickland* prong, it is unnecessary for the court to consider the other).

(Attach. 6, Ex. BB at 594-96).

This court defers to the state court's factual findings, because they are amply

supported by the record and because McKinney has not rebutted them with clear and

Page 20 of 33

convincing evidence to the contrary. This deference extends to the state court's determination that Assistant State Attorney Register's testimony was more credible than McKinney's testimony. Eleventh Circuit precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Id.* at 845 (citing 28 U.S.C. § 2254(e)).

With regard to the first element of § 2254(d)(1), there is no merit to McKinney's argument that the state court's decision was contrary to clearly established federal law, because the state court utilized the *Strickland* standard. The only remaining question is whether the state court's application of the *Strickland* standard was objectively unreasonable. *See* 28 U.S.C. § 2254(d)(1).

Based on the evidence in the record, the state court's rejection of McKinney's claim, for his failure to satisfy *Strickland*'s prejudice standard, was reasonable.

Register confirmed at the postconviction evidentiary that he had no trouble securing Watts's attendance at trial, that Watts was a very cooperative witness, and that it was Latasha Black, a non-essential witness, whose attendance was questionable. Register also confirmed that, due to Watts's cooperation and desire to see the charge against McKinney prosecuted, Register would have been prepared to go to trial even if defense counsel had filed the notice of expiration on July 29, 2008 (the date McKinney claimed she should have filed it) instead of August 4, 2008 (the date counsel actually filed it). Register explained:

> Q  [Assistant State Attorney Teeple]:  If expiration of speedy, which was filed on 8-4, if it had been filed five days sooner on July 29th, would you still have been able to try the case?
>
> A  [Timothy Register]:  Yes.
>
> Q:  Was Michael Watts cooperative?
>
> A:  Yes. Once I got notice of that the first thing I did after looking at the file was get up with the victim in this case because obviously he was the one who was able to identify the defendant. He was the only one that was able to identify the defendant. And after looking at the e-mails on the case I had him set up and ready to come to trial I believe on August 8th, I believe.
>
> . . . .
>
> Q:  Do you remember if you had to serve Michael Watts with a subpoena or not?

A:  I do not believe I served Michael Watts with a subpoena. He was cooperative and we got the flight scheduled. He stayed in contact with us, flew down the day prior to trial so he was cooperative from the moment we contacted him until the trial. So I don't believe I served him informally, as in mailing a subpoena, or formally, as in going through the authorities from Georgia because that's where he was living at the time. I didn't do either one.

Q:  So you wouldn't have had, you didn't have any problems with him when you were trying to schedule and get him here for trial?

A:  None, no.

Q:  Were you having issues with one of your State witnesses?

A:  I was getting to the point where I thought I was having issues with LaTasha Black. She quit returning my phone calls and it made me paranoid to the point that we did go through the formal subpoena powers through Georgia, having a state attorney's office up there go serve her, take her in front of a Georgia judge. I got on a conference call with the Georgia judge. He required her to come down here. We sent an investigator to go pick her up. So I don't know if she would have come down or not, I have no way of knowing that, only she would. She told me she would but I didn't believe her to the point that I was willing to just mail her a subpoena and hope she showed up.

Q:  Could you have proceeded to trial without her?

A:  Yes. She didn't identify the defendant as being the shooter. I believe she was present there but the only person who saw the defendant was Michael Watts, he was the only one outside. And, in fact, I believe Ms. McCarthy tried to ask LaTasha Black during the trial what her opinion was as to the

> guilt or innocence of the defendant. I objected because I knew
> her answer, she didn't think he did it. So I would have went
> forward without her, yes. Our victim wanted to go forward, he
> was the one shot in the stomach so, yes, I would have went
> forward without her.

(Attach. 6, Ex. CC at 661-64). Based on Register's testimony, which the state court

credited, fairminded jurists can concur in the conclusion that McKinney failed to

satisfy *Strickland*'s prejudice standard.

McKinney now attempts to work around Register's testimony by asserting,

for the first time, that defense counsel should have filed the notice of expiration of

speedy trial <u>even earlier</u>—on July 23, 2008, as opposed to July 29, 2008. McKinney

asserts that July 23, 2008 is the date the 175-day speedy trial time expired. (Doc. 10-

18; Doc. 14 at 3-4). McKinney contends:

> [S]ince the state attorney, Mr. Register testified that earliest date
> he could have brought the Petitioner to trial was on August 8,
> 2008—outside the recapture period—had Ms. McCarthy
> expeditiously filed the notice of expiration of speedy trial on its
> trigger date (July 23, 2008) the Petitioner would have been
> entitled to the procedures set forth in Fla. R. Crim. P. 3.191(p)(3):
> forever discharged from the crimes as charged in the
> information—on August 7, 2008.

(Doc. 1 at 15). McKinney argues that Register's testimony should be construed as

an "admission" that the State "could not have [taken] the Petitioner to trial during

the recapture period." (Doc. 1 at 16; Doc. 14 at 3).

McKinney's modified claim fares no better than the original, because it still is based on the speculative and erroneous premise that Register had difficulty securing Watts's attendance at trial. Register's testimony unequivocally refutes this premise.

McKinney's modified claim fails for the additional reason that it is based on a distortion of Register's testimony concerning his ability to go to trial at an earlier date. Contrary to McKinney's representation, Register did not testify, or even suggest, that he could not have been ready for trial earlier than August 8, 2008. Register's discussion of that date was in the context of explaining how quickly he was able to arrange for Watts's travel for trial (a mere 10 days after McCarthy's July 29, 2008, oral notice of expiration, and a mere 4 days after her August 4, 2008, written notice). (Doc. 13, Attach. 6 at 660-62). Register clarified, on questioning by McKinney's postconviction counsel, that his trial preparation (including making travel arrangements for Watts) would have begun immediately upon learning of defense counsel's intent to file a notice of expiration of speedy trial time. (Attach. 6 at 665). McKinney's interpretation of Register's testimony has no evidentiary support and, in fact, is undermined by Register's actual testimony.

Thus, regardless of whether McKinney asserts that counsel should have filed the notice of expiration of speedy trial time on July 29, 2008, or on July 23, 2008,

his claim fails under *Strickland*'s prejudice prong. McKinney has not established that there is a reasonable probability he would have been discharged from the crime had counsel not waited until August 4, 2008, to file the notice of expiration of speedy trial time. McKinney is not entitled to federal habeas relief on Ground One.

> **Ground Two**    **"Counsel failed to correctly convey the plea offers from the State Attorney of ten (10) and seven (7) years instead of twenty (20) and fifteen (15) years resulting in an involuntary rejection of a favorable plea offer. This error was in violation of Petitioner's constitutional rights to due process of law under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution as well as his Sixth Amendment right to constitutionally effective counsel." (Doc. 1 at 19).**

McKinney claims that defense counsel McCarthy was ineffective for failing to communicate a seven-year plea offer from the prosecutor. McKinney claims that had defense counsel informed him of that offer, he would have accepted it. (Doc. 1 at 19, 23).

### A.    Exhaustion

The parties agree that McKinney presented this claim to the state courts as Ground Two of his Rule 3.850 motion; that the state circuit court denied the claim on the merits in a reasoned order after an evidentiary hearing; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 24; Doc. 13 at 19). The First

DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

### B.    Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.*, 566 U.S. at 168. The two-part test articulated in *Strickland*, *supra*, applies to claims that counsel was ineffective during plea negotiations. *Id.* at 163 (applying *Strickland*'s two-part test to habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Missouri v. Frye*, 566 U.S. 134, 140, 147-51 (2012) (applying *Strickland*'s two-part test to habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

When a defendant claims that counsel was ineffective for failing to communicate a prosecution plea offer, *Strickland*'s prejudice prong requires him to demonstrate that there is "a reasonable probability [he] would have accepted the [uncommunicated] plea offer had [he] been afforded effective assistance of

counsel." *Frye*, 566 U.S. at 147. The defendant also must demonstrate "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Id*.

### C.    Section 2254 Review of the State Court's Decision

Consistent with *Wilson*, *supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192. The circuit court identified the *Strickland* standard as the controlling legal standard, (Attach. 6, Ex. AA at 412-13), and denied McKinney's claim for these reasons:

> In **Ground Two** of the instant motion, the Defendant argues his trial counsel was ineffective for failing to convey a plea offer of seven years made by the State prior to his trial. The Defendant alleges he did not know of the offer until he returned for resentencing after he was convicted by a jury and sentenced in the instant case. The Defendant alleges he would have accepted the offer prior to his trial had he known about it. After hearing all evidence presented on the issue at the evidentiary hearing, the Court finds the Defendant's argument is without merit. Specifically, the Court finds that the Defendant's trial counsel did in fact convey the seven year offer to the Defendant and the Defendant rejected the same. The Defendant's trial counsel testified at length about conveying the offer. She testified that she had specific recollection of conveying the offer because the Defendant had violated his federal probation and informed her that he was facing five to six years for that violation. As such, the Defendant's trial counsel recalled how great of a deal seven

years from the State was because the Defendant would already be serving, according to him, five or six years for his federal probation violation. She further testified that the Defendant maintained that he was innocent, that he would take no deal and wrote letters explaining the same, and he insisted that the victim would not testify at trial. The Defendant's trial counsel also explained to the Defendant that she was worried about trying the case as trial approached. She informed him of the facts and problems with his case in a letter. Jan Miron also testified that she accompanied the Defendant's trial counsel when she conveyed one of the three plea offers made in this case, which were for fifteen years, ten years, and seven years. While Jan Miron did not specifically recall which offer she was present for, she recalled the Defendant rejecting the offer, maintaining his innocence, and explaining that the State's witnesses would not come to trial to testify against him.

The Defendant testified that he was given a twenty year offer and fifteen year offer in writing, both of which he rejected. He explained that he did not think the State's witnesses would testify, but that he wished to enter a no contest plea to ten years, or preferably eight years, or less after he was unable to fire his trial counsel prior to trial. The Defendant testified he did not receive any offer after the fifteen year offer. He testified that he would have accepted the seven year offer, which he did not learn of until he was resentenced, had he known of it prior to trial if he had to proceed to trial with his trial counsel and could not get new counsel appointed. He testified that once he realized that he would not be discharged on speedy trial grounds, he knew it was in his best interest to enter a plea.

The Court finds the Defendant's trial counsel did in fact convey the seven year plea offer to the Defendant prior to trial and that the Defendant rejected the offer. Specifically, the Court finds the testimony of the Defendant's trial counsel, as well as the testimony of Jan Miron, very credible as to the facts that the Defendant continually maintained his innocence, continually

asserted that the State's witnesses would not testify, and continually maintained that he would not accept a plea offer. The Court finds the Defendant's testimony on the issue self-serving and not credible. Specifically, the Court finds the Defendant's explanation of his sudden willingness to accept a deal right before trial lacks credibility. The Defendant testified that his discontent with his trial counsel caused him to want to enter a plea; however, he did not inform his trial counsel of this in the letter dated August 4, 2008. He claims he intended to fire his trial counsel at that time and did not want to provide her with additional information. Furthermore, he testified that his inability to fire her caused him to want to enter a plea right before his trial was set to begin. The Court finds the Defendant's testimony lacks credibility. The Defendant's claim that animosity between himself and his trial counsel led to her failure to convey the seven year offer in the instant case is not credible in light of his trial counsel's assertion that she knew there were problems with the Defendant's case and she was worried about proceeding to trial. Indeed, the overwhelming evidence presented as to this issue suggests that the Defendant's trial counsel not only conveyed the seven year offer, along with all other offers from the State, but strongly encouraged the Defendant to accept an offer, particularly the seven year offer because it was such a great offer in light of the fact that the Defendant believed he would already be serving close to seven years for his federal probation violation. As such, the court finds the Defendant's trial counsel's performance was not deficient because she did in fact convey the seven year offer to the Defendant.FN1. This claim must thus be denied.

> FN1  As such, the Court need not address the prejudice prong. *See Waterhouse*, 792 So. 2d at 1182.

(Attach. 6, Ex. AA at 414-15).

This court defers to the state court's factual findings, including its credibility determinations, because they are amply supported by the record and because McKinney has not rebutted them with clear and convincing evidence to the contrary. (Doc. 13, Attach. 7, Ex. EE at 760-64, 782-83, 792-98 (McCarthy's postconviction evidentiary hearing testimony discussing the plea offers and McKinney's rejection of them)); *see also Consalvo*, 664 F.3d at 845; 28 U.S.C. § 2254(e).

Based on the state court's findings—that defense counsel timely conveyed all prosecution plea offers to McKinney, that counsel strongly encouraged McKinney to accept the seven-year offer, and that McKinney rejected all offers and was adamant that State afford him a trial—fairminded jurists could concur in the state court's conclusion that counsel did not perform deficiently. McKinney is not entitled to habeas relief on Ground Two.

## IV.    Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Ronnell Dupree McKinney*, Bay County Circuit Court Case No. 2006-CF-4377, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this 5th day of March, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**